## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**June 2, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **PEARL NIXON,** | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Wilson Circuit No. 8854 |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SHONEY'S, INC.** | ) | Appeal No. 01A01-9711-CV-00629 |
| | ) | |
| Defendant/Appellant. | ) | |

### APPEAL FROM THE WILSON COUNTY CIRCUIT COURT
### AT LEBANON, TENNESSEE

### THE HONORABLE BOBBY CAPERS, JUDGE

For the Plaintiff/Appellee:

Henry Clay Barry
Lebanon, Tennessee

For the Defendant/Appellant:

Andrew C. Rambo
Shelbyville, Tennessee

**AFFIRMED AS MODIFIED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

**OPINION**

This is a personal injury slip and fall case. The plaintiff was injured when she fell in the defendant's restaurant due to a tray negligently left on the floor. The defendant restaurant admits liability but asserts that the evidence does not support the amount of the trial court's award and seeks a remittitur. We affirm the trial court's decision as modified.

On January 26, 1993, the plaintiff, Pearl Nixon ("Nixon"), sustained injuries in the defendant's restaurant, Shoney's, Inc. ("Shoney's"). As Nixon walked around the end of the breakfast bar, she stepped into a bussing tray that was left unattended adjacent to the bar. The tray slid out from under her feet, causing her body to be thrown against the bar with one leg underneath her body. Nixon testified that she did not see the tray and would not have seen it even if she would have looked down because of the dim lighting in that area of the restaurant.

After the incident, Nixon filed this lawsuit against Shoney's alleging that the Defendant's employees negligently left the tray on the floor. She sought $100,000 as compensatory damages for her injuries, pain and suffering, medical bills, future pain and suffering, and future medical bills. In its Answer, Shoney's admitted that Nixon stepped in a busing tray while she was a customer in their restaurant. All other allegations were denied. Shoney's raised the defenses of failure to state a claim, contributory negligence, and assumption of the risk. The case was heard as a bench trial.

Over the four and one-half year period prior to trial, Nixon saw several physicians, complaining at various times of pain in her shoulder, arm, left rib cage, left hip, lower spine, right knee, and left ankle. The parties stipulated that the $6500 she spent in seeing these doctors was a reasonable amount for medical expenses.

After the injury, Nixon saw Dr. Randy C. Fullerton, who treated her for pain in her chest, right knee, left ankle and hip. Dr. Fullerton then referred Nixon to Dr. Stephen Neely, in June 1993, some four and one-half months after the fall. A referral letter from Dr. Fullerton to Dr. Neely indicated that Nixon's injuries were resolved except for pain in her hip and back. Nixon complained of back pain for the first time approximately ten days before she saw Dr. Neely. On the visit with Dr. Neely, Nixon complained to Dr. Neely of pain in the left rib cage, left iliac crest, and left hip. A bone scan indicated arthritis in the right knee and left ankle and healing rib fractures. Dr. Neely stated that the rib fractures, ankle pain, and knee pain were consistent with and more likely than not related to the fall, based on his opinion that the fall aggravated existing arthritic conditions in the knee and ankle. A myelogram showed bulging of the annulus and degenerative disk disease in

Nixon's back. Dr. Neely stated that the back problems probably pre-existed the fall because they "don't just develop in a short term after injury." Dr. Neely noted that the only way that he could correlate the spine problems with Nixon's back pain was to say that the "pre-existing degenerative disk disease in her twisting mobality [sic] as she went down, had been stirred up." However, when asked about medical certainty of the cause of the back pain, Dr. Neely testified as follows:

> A: Ascribing her pain to the degenerative changes that we saw on our studies; those changes certainly pre-dated her injury, but it's certainly possible that the symptoms were certainly exacerbated by the fall.
> Q: Would it be your opinion to a degree of medical certainty, and by a degree of medical certainty, I mean more likely than not, from the history she gave you that the pain that existed in her lower back is a result of the fall?
> A: Honestly, I'm not sure to a degree of medical certainty on that issue. I said twice in my notes, I'm not sure what's going on here. The pain was not typical of the pain one sees with degenerative disks. It was over a wider area involving the iliac crest, and you know, I never was comfortable that I understood what that pain was from. I just never felt I had a handle on why that lady had that pain.

In December of 1993, Nixon began complaining to Dr. Neely of shoulder pain; however, when dye was placed in the joint, apparently to test for the cause of the pain, the test was negative. Nixon consulted Dr. Neely for the last time in April 1994 about pain in her shoulder, back, and left leg, but did not return for follow up visits.

In December of 1995, almost two years after the fall, Nixon began seeing Dr. Richard T. Rutherford. She complained to Dr. Rutherford of pain in her left hip, leg, and back. His examination showed osteoporosis and osteoarthritis of the lower lumbar vertebrae, severe degenerative disc disease, and neuroforamenal stenosis at the L5 level.[1] In Dr. Rutherford's opinion, the fall could have resulted in the pain of which Nixon complained:

> Q: Based on the history, did you relate those injuries to a specific event?
> A: The radicular pain that she was having was, in my opinion, related to nerve root irritation that we found on testing, and although present at the time of the fall, the fall could very easily have set off a series of reactions in the body that resulted in the pain.
> Q: Did she report that she had that pain before the fall?
> A: No, she didn't have that specific pain.
> Q: Are your findings consistent with the fall setting off the chain of events that brought her to see you?
> A: That is plausible, yes, sir.
> Q: What is your prognosis?

---

[1] Dr. Rutherford explained that neuroforamenal stenosis occurs when the openings through which nerves pass shrink in size, thus putting pressure on the nerves.

A: Her--she is going to continue to have problems throughout her life . . . . But at the current state of the art, she may at some point require surgery for the neuroformenosis. Osteoporosis typically tends to get worse over a period of time.
Q: Is it your opinion that the pain will increase or decrease?
A: It's going to wax and wain, probably never going away.

When asked on cross examination whether he found objective findings of a causal connection between the fall and the hip or back injuries, Dr. Rutherford stated that the cause was neuroforamenal stenosis, "but the cause of the cause, there was no way of knowing" to a reasonable degree of medical certainty.

Both Nixon and her son testified about how the fall had affected Nixon's life. Nixon testified that she cannot do certain activities that she could perform prior to the fall, such as mowing her lawn, climbing, stooping, bending, putting on her pantyhose, standing on her feet for extended periods, vacuuming, and taking walks. Nixon's son testified that her inability to bend down now prevents her from washing dishes or using her lower oven. He testified that she cannot now cook large holiday meals or effectively trim her hedges as she used to, and that she must now sleep in an inclined position.

The trial court found Shoney's to be one hundred percent at fault and awarded Nixon $55,000 in compensatory damages. In its oral ruling the trial court emphasized that Nixon had no medical problems prior to the fall and that her arthritis, which previously caused her no discomfort, now causes her to have "good days and bad days as it relates to the pain associated with this injury." From this order, Shoney's now appeals.

The sole issue for appellate review is whether the evidence preponderates against the trial court's damages award.

Our standard of review is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure. Because the trial court tried this case sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. *See* Tenn. R. App. P. 13(d).

Shoney's does not dispute the medical testimony that Nixon fractured several ribs in the fall and aggravated pre-existing arthritis in her ankle and knee and does not dispute its liability for these injuries. Shoney's relies on Dr. Fullerton's letter to Dr. Neely to argue that the injuries related to the fall were resolved within 120 days after the fall, and that therefore, Nixon can only recover for pain and suffering for the four month period after the trial. Shoney's contends, however, that there

was no proof to a reasonable degree of medical certainty relating Nixon's injuries in her shoulder, hip, and back to the fall, and that therefore, the evidence preponderates against the amount of the trial court's award of damages. Shoney's notes that Nixon did not complain of back injuries until four months after the fall. In addition, Shoney's maintains that Nixon's current physical limitations are all caused by back problems and are unrelated to the fall.

"Where a physician testifies concerning the physical condition, his opinion must be reasonably certain both as to the cause of the physical condition and its future effects." *Porter v. Green*, 745 S.W.2d 874, 877 (Tenn. App. 1987). To support an award for damages, the physician's testimony must show more than a mere likelihood or possibility. *See id.* In this case, Nixon failed to demonstrate with reasonable certainty that the fall in Shoney's caused her back, hip, or shoulder problems. Although both Dr. Neely and Dr. Rutherford testified that the fall possibly could have aggravated the back and hip conditions, neither could say to a degree of medical certainty that the fall caused the pain or conditions. There was no testimony as to the causation of the shoulder pain. Nixon's testimony about the effect of the fall on her daily activities is insufficient to show a causal relation between the fall and the back, shoulder, or hip injuries. Because Nixon failed to prove the cause of these injuries to a reasonable certainty, the evidence preponderates against any compensation for them.

Nixon's recovery is limited to compensation for damages she has shown to a degree of reasonable medical certainty--the fractured ribs and aggravated arthritic conditions in her knee and ankle. In order to recover for permanent injuries to these areas, however, Nixon must prove the future consequences of these injuries to a degree of reasonable medical certainty. *See id.* This was not done. Nixon refers to Dr. Rutherford's testimony that Nixon's condition will "wax and wain, probably never going away" as evidence of permanent injury. Dr. Rutherford's statement, however, refers to the effects of the neuroformenosis and osteoporosis, not the arthritic knee condition or rib fractures. As noted above, Nixon cannot be compensated for her back, hip, or shoulder injuries because she failed to prove to a degree of reasonable medical certainty that they were caused by the fall. Nixon and her son testified that, as of the time of trial, she could not perform some of her prior

4

activities; their testimony does not establish that the limitations are permanent. Therefore, the evidence is insufficient to support an award for permanent injuries in this case.

Consequently, Nixon must be limited to recovery for the pain and suffering associated with the rib fractures and arthritic knee and ankle conditions. The letter from Nixon's original treating physician, Dr. Fullerton, indicated that both of these injuries were resolved within four and one-half months after the fall. Nixon did complain of pain in her ribs in June 1993, on her first visit to Dr. Neely. However, after that, the record contains no further mention of rib, ankle, or knee pain. Therefore, the evidence supports an award for only this five month period. We reduce the award of compensatory damages to $30,000 including the $6500 of medical expenses.

In sum, the evidence in this case does not support an award of damages for Nixon's back, hip, or shoulder conditions. The plaintiff presented sufficient evidence to support an award of damages for the rib fractures and arthritic knee and ankle conditions. However, Nixon failed to present sufficient evidence that these injuries were permanent. Therefore, Nixon's recovery for these injuries is limited to damages for the five-month period following the fall. We reduce the compensatory damages to $30,000.

The decision of the trial court is as affirmed as modified. Costs are taxed to Appellee, for which execution may issue if necessary.

_____
                              **HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**DAVID R. FARMER, J.**